# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JERAMIE DALE OAKLEY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) CASE NO. 10-cv-110-JPG-PMF ) |
| JUSTIN ADRIAN, et al., | ) ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Before the Court are defense motions for summary judgment (Doc. Nos. 49, 52, 57). In some respects, the motions are opposed (Doc. No. 61). Defendant Malnar has served a reply (Doc. No. 62).

Plaintiff Jeramie Dale Oakley initiated this action against defendants Justin Adrian, Joseph Thomas, Kevin Orr, Tracy Lemonds, Carl Kinnison, Adam Miller, Doug McDaniel, Mike Lynch, and Greg Malnar. His claims arose when he was arrested on September 4, 2009, following pursuit from Jackson, Missouri to rural Illinois. After Judge Gilbert reviewed the Complaint pursuant to 28 U.S.C. § 1915A, two cognizable federal claims were identified (Doc. No. 9). For purposes of this discussion, Oakley's claims are separated into Counts, as follows:

**Count 1** – Defendants Adrian, Miller, Thomas, Lynch, McDaniel, Malnar, Lemonds, Orr, and Kinnison violated the Fourth Amendment by using excessive force during the arrest or by failing to intervene to prevent other officers from using excessive force during the arrest.

**Count 2** – Defendants Adrian, Miller, Thomas, Lemonds, Orr, Lynch, McDaniel, and Malnar conspired to violate plaintiff's Fourth Amendment rights in violation of 42 U.S.C. § 1985(3).

Summary judgment will be entered if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Factual positions must be supported by admissible evidence. Fed. R. Civ. P. 56(c)(1), (2). The Court must construe the facts and draw all reasonable inferences in favor of the nonmoving party. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

## I. Qualified Immunity - Count 1

Defendants Malnar and Miller assert the defense of qualified immunity as to Count 1. The doctrine of qualified immunity protects government officials from liability for civil damages when their conduct does not clearly violate established statutory or constitutional rights of which a reasonable person would have known. *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010) *citing Pearson v. Callahan*, 555 U.S. 223, (2009). On a qualified immunity claim, the Court confronts two questions: (1) whether the plaintiff has made out a deprivation of a constitutional right; and (2) whether that right was clearly established at the time of the misconduct. *McAllister*, 615 F.3d at 881.

The parties agree that the conduct challenged in Count 1 is governed by the Fourth Amendment's objective reasonableness standard. The defendant's behavior is "judged from the perspective of a reasonable officer on the scene." *Abdullahi v. City of Madison,* 423 F.3d 763, 768 (7th Cir.2005) (*quoting Graham v. Connor*, 490 U.S. 386, 395 (1989)). Factors to be considered include the severity of Oakley's crime, whether Oakley posed an immediate threat to the safety of those present, whether Oakley was resisting arrest or attempting to evade arrest, and whether Oakley was interfering or attempting to interfere with the officers' execution of their duties. *Graham*, 490 U.S. at 396; *Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir.2000).

In some circumstances, a law enforcement officer has a duty to intervene to prevent the use of excessive force by another. *Morfin v. City of East Chicago*, 349 F.3d 989, 1001 (7th Cir. 2003). The officer must (1) be informed of the facts that establish a constitutional violation and (2) have the ability to prevent the violation from occurring. *Id*.

The qualified immunity defense is first considered with respect to the conduct of defendant Malnar. Malnar has not submitted an affidavit describing the circumstances of Oakley's arrest. He relies on information provided by Oakley during his deposition and in response to written discovery requests. Malnar also submits records showing that Oakley committed felonies in Missouri before he was arrested in Illinois.

Oakley's deposition testimony shows that he drove a minivan from Missouri to Illinois in an effort to elude a number of law enforcement officers who were attempting to arrest him after he had an argument with his ex-wife. During the lengthy pursuit, Oakley violated traffic laws and recognized but refused to obey signals to stop the minivan. At one point, another vehicle collided with the minivan, yet Oakley continued to flee. Initially, he avoided efforts by law enforcement officers to disable the minivan by puncturing the tires. Oakley stopped in Illinois, in the middle of a highway near the intersection of Route 146 and Route 3. By that time, law enforcement officers has succeeded in puncturing several tires and Oakley could no longer maneuver the minivan. Oakley's testimony suggests that Malnar, an Illinois State Trooper, parked his vehicle in front of the disabled minivan. A number of officers who had pursued Oakley from Missouri parked behind the minivan.

There are factual disputes regarding Oakley's conduct immediately after he stepped out of the minivan. Viewing the evidence and drawing reasonable inferences in Oakley's favor, he walked away from the minivan, towards the officers who had pursued him from Missouri. These officers spread out, pointed their weapons at Oakley, and shouted instructions. At about the same time, Malnar stepped from his vehicle, drew his weapon, and also shouted instructions. Oakley stopped about 20 feet from his minivan and stood in the road with his arms at his side. He remained in that position for approximately 2 minutes. Oakley believes Malnar walked towards the minivan, guessing the distance between Malnar and the closest Missouri police officer to be approximately the length of one vehicle. Because Oakley suffers from a memory lapse, he is not able to say "who went where and who did what" beyond that point (Doc. No. 50-2, pp. 32, 56-58).[1]

Malnar argues that his conduct of pointing a weapon and shouting was reasonable because Oakley did not yield to his show of force for at least two minutes. He suggests that he made reasonable and discretionary judgments, based on his perception of public needs. This argument is not well-supported by evidence describing Malnar's understanding of events or perception of public needs. Moreover, the argument reflects a misunderstanding of Oakley's claim for relief. Oakley is not claiming that his arrest was unreasonable because Malnar displayed his weapon. Oakley claims that Malnar (and others) should have recognized that defendant Adrian's repeated use of a taser was unreasonable. Oakley maintains that Malnar is liable because he failed to intervene to prevent Adrian from inflicting excessive force causing harm (Doc. No. 1, 61).

---

[1] The testimony suggests that Oakley marked a diagram to indicate Malnar's position in relation to Oakley and other officers. The diagram was not submitted as an exhibit.

Malnar's second argument is more on point. He argues that he was not in a position to realistically intervene to assist Oakley during the arrest. He suggests that the evidence puts him at least one, perhaps two, car lengths from the Missouri officers (Doc. No. 50, p. 12). This argument is not supported by evidence describing Malnar's location or proximity to Oakley at the relevant time: when defendant Adrian was deploying his taser for the second, third, and fourth times.

Malnar also argues that he had no duty to exercise control over and prevent Missouri officers from arresting Oakley (Doc. No. 50, p. 12-13). This argument misconstrues Oakley's claim for relief. Oakley is not claiming that Malnar should have intervened to prevent the arrest. As noted above, he claims that Malnar should have intervened to prevent excessive force (Doc. No. 1).

Because Malnar has not shown that he is entitled to judgment in his favor on the qualified immunity defense, this part of his motion (part of Doc. No. 49) should be denied.

The qualified immunity defense is also considered with respect to Oakley's claim against defendant Miller. Miller argues that clearly established law does not show that his use of physical force during the arrest violated Oakley's Fourth Amendment rights (Doc. No. 58, pp. 8-12). In response, Oakley refers generally to affidavits supplied by arresting officers, which he believes show that the amount of force used during his arrest was unreasonable under the circumstances. He also presents a photo, which he describes as a depiction of himself restrained in a hog-tie position.

The evidence shows that, prior to the arrest, Oakley was suspected of threatening to kill and attempting to stab two people with a screwdriver. Miller, an officer with the Missouri Highway Patrol, pursued Oakley, and heard this report, which suggested to him that Oakley was armed with a weapon. When Oakley left his minivan, Miller ordered Oakley to show his hands and get on the

ground and observed that Oakley did not comply with his instructions. Instead, Oakley yelled "shoot me motherfuckers." Justin Adrian and Joseph Thomas declined this invitation, choosing instead to prepare to deploy their tasers. Adrian deployed his taser first. One prong struck Oakley in the abdomen and the other prong struck Oakley in the head. Oakley fell to the ground and landed on his back. He did not follow verbal instructions to roll over onto his stomach. Adrian used his taser in stun drive mode three times in an effort to gain control over Oakley. The additional force was used because Oakley fought against the officers and resisted their efforts to restrain him with handcuffs and leg shackles. The last time Adrian deployed his taser, Oakley had been secured in handcuffs but was still fighting (Doc. No. 53-1, 53-2, 53-4).

Before Oakley was restrained, Miller used physical force. He grabbed Oakley's right arm and struck him in the torso three or four times. This amount of force was used in an effort to force Oakley to bring his right arm from behind his body to the front of his body so that Miller could determine whether Oakley was concealing a weapon behind his back.[2] Tracy Lemonds, a member of the Cape Girardeau police department, held Oakley's feet down as he was fighting the officers. Mike Lynch, an officer with the Missouri Highway Patrol, used a degree of force by attempting to secure Oakley's right shoulder. Eventually, the force used allowed the officers to restrain Oakley with handcuffs and leg shackles. The evidence does not clearly reveal that Oakley was restrained in a hog-tie position.[3]

---

[2] Portions of Justin Adrian's affidavit are missing. The portions that were submitted have been considered.

[3] *In Cruz v. City of Laramie, Wy*, 239 F.3d 1183, (10th Cir. 2001), application of a hog-tie to restrain a suspect was found to be excessive under the circumstances. The hog-ti e was defined

Miller cites to *Martin v. Luckett*, 2011 WL 1231024 (N.D. Ill. March 30, 2011), where it was held that deployment of a trained dog to restrain a suspect until he could be subdued following a chase across multiple counties, traffic violations, and collisions, was not excessive force. In an effort to show that the defense lacks merit, Oakley cites three cases decided in the Court of Appeals. On review of the submitted case law, the Court is not convinced that Miller had reason to known that his conduct of repeatedly punching Oakley in the torso when Oakley (a) was suspected of attempting to stab two people with a screwdriver, (b) could have been armed, (c) fled from officers attempting to make an arrest, (d) collided with another vehicle and violated a variety of traffic laws, (e) appeared to be defying instructions and inviting violence, (f) had been temporarily stunned by a taser, and (g) is laying on his back with one hand concealed, was clearly a violation of the Fourth Amendment's standard for using force during an arrest. Because Oakley cannot point to a favorable decision based on facts somewhat similar to these and decided before September 4, 2009, Miller's qualified immunity defense has merit. This aspect of Miller's motion should be granted.

## II. Personal Involvement/Respondeat Superior

Defendants Carl Kinnison, Kevin Orr, and Tracy Lemonds seek judgment in their favor on the basis that they were not personally involved in a deprivation of Oakley's Constitutional rights (Doc. No. 53, pp. 15 - 16). The materials submitted in support of this argument show that neither Orr nor Kinnison were present when Oakley was arrested. Lemonds arrived after Oakley had been

---

as ankles and wrists bound together behind the back, with less than 12 inches of separation. The photo submitted by Oakley has not been authenticated. Moreover, the photo does not show distinct persons, such that Oakley's body position may be discerned.

placed under arrest and taken into custody. Lemonds saw Adrian use a taser and assisted by holding Oakley's feet. Lemonds observed that Oakley was "fighting the officers" and "being very combative"(Doc. Nos. 53-4, 53-5, 53-3).

Before these defendants may be held liable under § 1983, Oakley must present facts showing that they were personally responsible for any unreasonable use of force. *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006). To be personally responsible, Kinnison, Orr, and Lemonds must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).

Plaintiff's response to the motion does not satisfy this element of proof (Doc. No. 61). While Oakley suggests that the officers could have attributed his movements and conduct to injury or diminished capacity, this amounts to pure speculation. Oakley has not provided or pointed to admissible evidence that could support an inference that Lemonds observed and authorized a level of force that he should have recognized to be unreasonable under the circumstances. Judgment should be entered in favor of defendants Kinnison, Orr, and Lemonds on Count 1.

### III. Fourth Amendment Claim

The remaining defendants seek judgment in their favor on the merits of Count 1. Defendant Malnar relies on an absence of supporting evidence, due to Oakley's memory lapse (Doc. No. 50, p. 6). Defendants Adrian, Thomas, Lynch, and McDaniel rely on the circumstances presented to them at the time force was used. They argue that the amount of force used was reasonably necessary to gain control over Oakley, when all circumstances are considered. Those circumstances include: Oakley's conduct in Missouri (perceived by the officers as attempted homicide); the possibility that

Oakley was armed; Oakley's desperate flight from Jackson, Missouri, through Cape Girardeau, Missouri, into Illinois; Oakley's multiple traffic violations; Oakley's continued flight following a motor vehicle collision; Oakley's apparent defiance of multiple verbal commands (to show his hands, to get on the ground, to turn over on his stomach); Oakley's statement inviting violence; and Oakley's combativeness after initial force was applied.

Considering the admissible evidence in the light most favor to Oakley but from the perspective of a reasonable officer on the scene at the time the events unfolded, Oakley has not shown that it was objectively unreasonable for Adrian to deploy his taser multiple times in order to subdue Oakley and complete the arrest. While the force used was considerable, it was reasonably proportionate to the need for force. Accordingly, judgment should enter in favor of defendants Malnar, Lynch, McDaniel, Thomas, and Adrian on Count 1.

## IV. Count 2 - Conspiracy

Oakley asserts a conspiracy claim pursuant to Title 42 U.S.C. § 1985(3). To succeed on Count 2, Oakley must show (1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of a conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens. *Green v. Bended*, 281 F.3d 661, 665 (7th Cir.2002); *accord Alexander v. City of S. Bend,* 433 F.3d 550, 556–57 (7th Cir.2006). There must be "some racial, or otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Green,* 281 F.3d at 665.

The defendants point to the absence of evidence supporting the elements of the conspiracy claim. In response, Oakley suggests that he has such evidence, but does not refer the Court to

specific information (Doc. No. 61). At this phase of the litigation, general allegations suggesting that defendants acted in concert do not suffice to show a genuine issue of fact for trial. Fed. R. Civ. P. 56(e)(2). Because plaintiff has not come forward with evidence that could support a verdict in his favor, judgment in favor of the defendants should be entered on Count 2.

## V. Possible Additional Claims

Several defendants have interpreted Oakley's allegations as asserting First Amendment, Fifth Amendment, Eighth Amendment, and assorted state law claims. When Oakley's pleading was reviewed to identify cognizable claims, claims based on violations of these Amendments and state laws were not identified (Doc. No. 9). See 28 U.S.C. § 1915A(b). Oakley has not amended his Complaint to assert claims beyond the federal claims identified on threshold review. He has expressly abandoned any claim based on violations of the First, Fifth, and Eighth Amendments (Doc. No. 61). At this time, Oakley is not asserting § 1983 claims based on the First Amendment, the Fifth Amendment, the Eighth Amendment or violations of state law. Alternatively, any such claims are either withdrawn or subject to dismissal. *Grace v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999)(the usual practice is to dismiss supplemental state law claims without prejudice when all federal claims are resolved before trial).

## VI. Conclusion

IT IS RECOMMENDED that the motions for summary judgment (Doc. Nos. 49, 52, 57) be GRANTED in part and DENIED in part, as follows:

(1). Defendant Malnar's qualified immunity defense should be denied.

(2). Summary judgment should be entered in favor of defendant Miller on Count 1, based on the doctrine of qualified immunity.

(3).  Summary judgment should be entered in favor of defendants Orr, Lemonds, and Kinnison on Count 1, based on their lack of personal involvement.

(4).  Summary judgment should be entered in favor of defendants Malnar, Adrian, Thomas, Lynch, and McDaniel on the merits of Count 1.

(5).  Any state law claims should be dismissed without prejudice.

If these recommendations are adopted, no claims will remain for decision.

**SUBMITTED:  January 24, 2012 .**

    **S/Philip M. Frazier**
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**